UNITED STATES of America, Appellee,

v.

David P. TWOMEY,
Defendant, Appellant.

Nos. 87–1760, 87–1916.

United States Court of Appeals,
First Circuit.

Heard April 7, 1988.
Decided May 5, 1988.

William P. Homans, Jr., with whom Homans, Hamilton, Dahmen & Marshall, Boston, Mass., was on brief, for defendant, appellant.

William H. Kettlewell, Asst. U.S. Atty., with whom Frank L. McNamara, Jr., U.S. Atty., Boston, Mass., was on brief, for appellee.

Before COFFIN, TORRUELLA and SELYA, Circuit Judges.

SELYA, Circuit Judge.

We are asked to revisit the sentence imposed on David P. Twomey, a former federal prosecutor, following his conviction on charges of conspiring to subvert and impede a federal criminal investigation, conspiring to obstruct justice, and two substantive acts of obstruction. These four charges (and others, as to which Twomey was acquitted) arose out of his remunerated disclosure of confidential law enforcement information to a drug kingpin. The district court imposed a four year term of imprisonment on each count (well within the statutory maxima), and ordered these terms to run consecutively.

We need not dwell today on the sordid facts of the affair, as an exegetic account is set forth in our earlier opinion on direct appeal. *See United States v. Twomey*, 806 F.2d 1136, 1138–39 (1st Cir.1986). Among a host of other remonstrances, appellant claimed then that he had been denied his right to allocution at sentencing and that the imposition of cumulative punishment subjected him to double jeopardy. *Id.* at 1142–44. Nevertheless, we upheld the judgment of conviction, including the stated sentence.

Twomey later filed a timely motion for reduction of sentence under Fed.R.Crim.P. 35(b).[1] At the time of his conviction, and as applicable here, the rule provided in pertinent part:

A motion to reduce a sentence may be made, or the court may reduce a sentence without motion, within 120 days after the sentence is imposed or probation is revoked, or within 120 days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or within 120 days after entry of any order or judgment of the Supreme Court denying review of, or having the effect of up-holding, a judgment of conviction or probation revocation. The court shall determine the motion within a reasonable time.

Fed.R.Crim.P. 35(b).

The motion was two-pronged: it sought clemency because of (i) the impact of the disposition on Twomey's family,[2] and (ii) an asserted disparity between the sentence actually imposed and the sentence presumptively indicated by certain draft sentencing guidelines (Guidelines) tentatively promulgated by the United States Sentencing Commission (Sentencing Commission). The district court denied the motion without opinion or comment. We affirm.

I

There is a threshold matter with which we must deal. Two appeals are before us. Defendant initially sought review of the rejected Rule 35(b) motion by means of Appeal No. 87–1760. Defense counsel mailed the notice of appeal, properly addressed and with adequate postage, from his office building (located two blocks from the courthouse), five days before the filing deadline. Nevertheless, the notice was not received and docketed until 8:37 a.m. on the day after it was due. We therefore remanded No. 87–1760 to the district court with instructions to treat the late notice as a motion for extension of time under Fed.

1. Appellant has not invoked Fed.R.Crim.P. 35(a), or otherwise challenged in this proceeding the constitutionality or legality of his sentence.

2. Appellant has not argued family hardship before us, so we will not refer to that topic again. In any event, as a general proposition, "[t]he spectre of harm to innocent family members should not be permitted to insulate a felon from the condign consequences of his criminal deportment, nor to entrammel the execution of a fair and just sentence." *United States v. DeCologero*, 821 F.2d 39, 44 (1st Cir.1987). There is nothing in the present record so untoward as to require that this tenet be cast aside.

R.App.P. 4(b). On remand, the court denied the motion, from which denial defendant prosecutes Appeal No. 87–1916.

It is perfectly plain that the delayed filing eventuated from the delinquency of the postal service and/or court personnel. Defense counsel appears to have acted in a reasonably diligent manner. We think that any "neglect" involved in mailing the notice rather than filing it in person was surely excusable. *Cf. Scarpa v. Murphy*, 782 F.2d 300, 301 (1st Cir.1986) (post office's unexplained delay in "tak[ing] more than five days ... to transmit an adequately addressed letter three miles" warranted extension of civil appeal deadline under Fed.R.App.P. 4(a)(5)). It was thus an abuse of discretion to deny the Rule 4(b) motion. Accordingly, we proceed to the merits of Appeal No. 87–1760.

## II

■ Only recently, in *United States v. DeCologero*, 821 F.2d 39 (1st Cir.1987), we spoke to the operation of Rule 35(b) and to the commodious discretion which it vests in the sentencing judge. We endorsed the proposition that the chief function of a Rule 35(b) motion is merely "to allow the district court to decide if, on further reflection, the sentence seems unduly harsh." *Id.* at 41 (citation omitted). We stressed that the rule was "not meant to guarantee the defendant an instant replay of the sentencing process." *Id.* And we observed that, "[i]n the usual case, the court—if unmoved by the plea to reconsider—need not even explain the reasons underlying its denial of the motion." *Id.*

■ These principles, we think, are controlling here. There is nothing sufficiently unusual about this motion to take it outside of the general rule. We are constrained to uphold a refusal to reduce a sentence under Rule 35(b) except upon a showing of gross misuse of discretion. *DeCologero*, 821 F.2d at 41–42; *United States v. Ames*, 743 F.2d 46, 48 (1st Cir. 1984) (per curiam), *cert. denied*, 469 U.S. 1165, 105 S.Ct. 927, 83 L.Ed.2d 938 (1985). There is simply no reasoned way that we can say such an abuse occurred. Whether

the trial judge decided that the substance of the proffer was not worthy of consideration, or analyzed and rejected it because of a perceived congruity between the Guidelines and the imposed sentence, matters not at all. In either event, given the circumstances of this case, the judge acted within his discretion. Appellant's ingenious argument, we might add, that we can reverse without finding an abuse of discretion because the record in this case reflects a refusal to exercise discretion, is mere wordplay.

■ We take a moment to put Twomey's proffer of the suggested Guidelines into perspective. After more than three decades of study, debate, and drafting, Congress accomplished a long-sought goal and achieved a major overhaul of the criminal sentencing process by enactment of Title II of the Comprehensive Crime Control Act of 1984 (Sentencing Reform Act), Pub.L. No. 98–473, 98 Stat. 1837 (1984). The Sentencing Reform Act created the Sentencing Commission, 28 U.S.C. § 991, and provided that it issue guidelines for use by federal judges to insure a policy of determinate, nondisparate sentencing. *See* 28 U.S.C. § 994(a). As amended, the law required the Sentencing Commission to submit its initial proposed guidelines to Congress by April 13, 1987, to take effect automatically on November 1, 1987 (absent congressional action in the interim). *See* Sentencing Reform Amendments Act of 1985, Pub.L. No. 99–217, 99 Stat. 1728 (1985). The Guidelines submitted to the district judge with the Rule 35(b) motion were an intermediate (revised) draft, promulgated by the Sentencing Commission in January 1987. They were not in final form; they had not survived congressional scrutiny; and most important, they were not in force.

When we superimpose the temporal attributes of appellant's case upon this background, and stir in the generous dose of discretion which Rule 35(b) demands, the futility of the quest becomes readily apparent. Twomey was charged with, and convicted of, criminal misconduct occurring in the period 1981–84. He was indicted in October 1985, tried in January 1986, and

sentenced on March 10, 1986. The Guidelines were not in effect—or in existence, for that matter—when any of these events transpired. They were not in place during the currency of the Rule 35(b) proceedings below. *See supra.* When the final guidelines became operative on November 1, 1987, the law expressly provided that they were to apply "only to offenses committed after [November 1, 1987]." Sentencing Act of 1987, Pub.L. No. 100–182, 101 Stat. 1266 (1987).[3]

██ We need not belabor the point. The introduction of the guidelines represents a huge change of direction in criminal sentencing. Congress, in its wisdom, elected to make that change prospective only, and to establish a specific cutoff date. In instances where the guidelines apply, the federal courts must pay due obeisance to them.[4] But in earlier cases, like this one—cases where the guidelines, by the terms of the statute, are inapposite—we refuse to saddle the district courts with an obligation to work through the guidelines in passing upon Rule 35(b) motions. To do so would, in our judgment, constitute impermissible second-guessing of the Congress, and harbor the potential for wreaking untold mischief. And, it would call upon the district courts to compare plums with pomegranates by making dubious matches between nondeterminate pre-guidelines sentences (where, in the usual instance, time served fluctuates greatly from time imposed) and determinate sentencing under the auspices of the guidelines (where, in theory, sentences mean what they say).

Appellant argues that the Second Circuit has held to the contrary. *See United States v. Golomb,* 754 F.2d 86 (2d Cir. 1985), *opinion after remand,* 811 F.2d 787

(2d Cir.1987). We do not read *Golomb* so expansively. There, unlike here, the matter was on direct appeal. Moreover, the court focused on the enabling legislation rather than on the guidelines per se. And, the reference was not in terms of specific offender conduct but only in terms of treating the Sentencing Reform Act as an "expression of congressional sentiment ... even prior to the formal effective date, in determining whether ... the sentence was adequately explained." 754 F.2d at 90–91. The *Golomb* panel used this "expression" to buttress its conclusion that the situation before it comprised the "rare case where *even under existing law* a statement of reasons is required." *Id.* at 91 (emphasis supplied). It takes intellectual acrobatics far too sprightly for our collective mindset to twist *Golomb* into authority supportive of Twomey's position.

██ A district judge must, we think, have considerable latitude in determining what to evaluate in the Rule 35(b) milieu, and in assigning (or declining to assign) weight and worth to proffered materials. We need not attempt exhaustively to map the frontiers of this latitude today, for the boundaries extend comfortably past the point at which the court below balked. By eschewing speculation as to what sentence the Guidelines, had they been in effect, would or would not have justified, the court used its wide discretion in an entirely allowable way. Let us be precise: the judge, in his discretion, was entitled to look at the Guidelines and give them some weight if he chose to do so; but he was equally entitled to treat them as surplusage—or worse than surplusage—for the purpose at hand. If this is unfair—and we do not believe it is—then the unfairness

---

**3.** Indeed, Rule 35(b), as we knew it, was substantially modified in anticipation of the adoption of the final guidelines. *See* Sentencing Reform Act, *supra,* 98 Stat. at 2015–16. Congress took pains, however, to insure that the former version of the rule applied in cases such as this, where the "offense[ ] [was] committed before the taking effect of [the guidelines]." Sentencing Act of 1987, *supra,* 101 Stat. at 1271.

**4.** We are aware that the guidelines have been challenged on constitutional grounds, with con-

flicting results. *Compare, e.g., United States v. Johnson,* No. 87–00276–01, memorandum and order (W.D.Mo.Apr. 1, 1988) (finding Sentencing Reform Act of 1984 constitutional) *with United States v. Arnold,* 678 F.Supp. 1463 (S.D. Cal.1988) (guidelines invalidated because enabling legislation violates separation of powers doctrine). Inasmuch as these appeals do not present the issue, we take no view of the constitutional question.

stems from Congress' decision to draw the line which linked specific offender conduct to the sentencing guidelines at November 1, 1987. *Cf. Sprandel v. Secretary of HHS*, 838 F.2d 23, 27 (1st Cir.1988) (per curiam) (if effect of fixed time parameters "seems unfair in the peculiar circumstances of [a given] case ... that is endemic to lines—wherever they may be drawn, some people fall on the 'other' side").

### III

We need go no further. Our second visit to appellant's sentence, like our first, leaves the sanction undisturbed. The district court did not misuse its discretion in denying Twomey's plea for reduced punishment. Although we sustain Appeal No. 87–1916 and treat the merits appeal (No. 87–1760) as properly before us, we find that appeal to be jejune. The order of the district court denying defendant's posttrial Rule 35(b) motion is, therefore, *Affirmed.*

*So Ordered.*